## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | |
|---|---|
| **NUECES COUNTY, TEXAS,**<br><br>　　　　　　　Plaintiff,<br><br>**vs.**<br><br>**MERSCORP HOLDINGS, INC.;**<br>**MORTGAGE ELECTRONIC**<br>**REGISTRATION SYSTEMS, INC.; AND**<br>**BANK OF AMERICA, NATIONAL**<br>**ASSOCIATION,**<br><br>　　　　　　　Defendants. | CIVIL ACTION NO. _____<br>JURY |

### PLAINTIFF'S ORIGINAL COMPLAINT, JURY DEMAND,
### AND APPLICATION FOR INJUNCTIVE RELIEF

COMES NOW Nueces County, Texas ("Plaintiff") complaining of MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and BANK OF AMERICA, NATIONAL ASSOCIATION ("Defendants"), and would show the Court as follows:

### I.
### STATEMENT OF THE CLAIMS

1.　　Defendants are members of the mortgage finance industry. This lawsuit seeks to have Defendants clean up the mess they have created in Nueces County's real property records and to hold Defendants accountable for their violation of Texas law.

2.　　Defendants MERSCORP Holdings, Inc. f/k/a MERSCORP, Inc. and its wholly-owned subsidiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), were created by Defendant Bank of America, National Association, together with other members of the mortgage banking industry, to facilitate the rapid transfer of mortgage

loans amongst members of the industry and to avoid recording mortgage assignments and paying the associated fees.

3.      MERS allows the mortgage industry to "register" property transfers on its website. Members, who are part of the mortgage industry, pay membership dues and per-transaction fees to MERS. In exchange, MERS members are allowed to "record" property transfers and avoid the county recording system in Texas and throughout the country. Through the Defendants' electronic recording system, MERS engaged and continues to engage in deceptive practices that create confusion amongst property owners, damage the integrity of Texas' real property records, and deny Plaintiff millions of dollars in uncollected fees.

4.      By creating and maintaining a system that lacks corporate controls, oversight, and reliability, Defendants systematically circumvented Texas recording law for which Plaintiff seeks damages and injunctive relief.

## II.
## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## III.
## PARTIES

7.      Plaintiff Nueces County is a political subdivision of the State of Texas.

8.      Defendant MERSCORP Holdings, Inc. ("MERSCORP") is a Delaware corporation that maintains it principal place of business at 1818 Library Street, Suite 300, Reston, Virginia 20190. MERSCORP engages in business in Nueces County, Texas but does not maintain a regular place of business in this state or a designated agent for service of process for proceedings that arise out of MERSCORP's business done in this state. MERSCORP may be served with citation by serving:

Bill Beckmann
President and Chief Executive Officer
MERSCORP Holdings, Inc.
1818 Library Street, Suite 300
Reston, Virginia 20190

At all times material hereto Defendant MERSCORP has engaged in business in Nueces County, Texas or committed a tort, in whole or in part, in Nueces County, Texas and the claims made herein arise out of such activities in Nueces County, Texas.

9.      Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation and wholly-owned subsidiary of Defendant MERSCORP. MERS engages in business in Nueces County, Texas but does not maintain a regular place of business in this state or a designated agent for service of process for proceedings that arise out of MERS' business done in this state. MERS may be served with citation by serving:

Bill Beckmann
President and Chief Executive Officer
Mortgage Electronic Registration Systems, Inc.
1818 Library Street, Suite 300
Reston, Virginia 20190

At all times material hereto Defendant MERS has engaged in business in Nueces County, Texas or committed a tort, in whole or in part, in Nueces County, Texas and the claims made herein arise out of such activities in Nueces County, Texas.

10.     Defendant Bank of America, National Association ("BOA") is a Delaware corporation that may be served with citation by serving its registered agent in Texas by certified mail, return receipt requested, addressed to:

Bank of America, National Association
C/o Its Registered Agent
CT Corporation System
350 N. St. Paul Street
Suite 2900
Dallas, Texas 75201-4234

At all times material hereto BOA has engaged in business in Nueces County, Texas or committed a tort, in whole or in part, in Nueces County, Texas; and the claims made herein arise out of such activities in Nueces County, Texas. Upon information and belief, BOA was at all times material hereto and currently is a shareholder in MERSCORP.

## IV.
## FACTUAL BACKGROUND

### A.    Mortgages

11.    As early as the 17th Century, American Colonies passed property recordation statutes, requiring a mortgagee (the party who makes the loan) to record mortgages or assignments or risk losing its ability to enforce the contract against a subsequent purchaser for value.

12.    The purpose of these recording statutes are, in the words of one commentator, "to prevent disputes over property rights and to facilitate the use of land as collateral by creating a transparent public record that provides certainty in private bargains." Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1364-65 (2010). Specifically, mortgage lenders, when contemplating offering a loan secured by land, use the Texas statutory Grantor/Grantee indexes compiled by each county clerk to ensure that debtors have not already sold the land, granted a mortgage to someone else, and that there are no liens on the property. All fifty states and the District of Columbia retain recording statutes similar to their colonial predecessors. Texas adopted its first recording statute well over a century ago.

**B.    Mortgage Recordation in Texas**

13.    Mortgage recordation in Texas is governed by Chapter 12 of the Texas Property Code. Section 12.001 of the Property Code provides, in part, "An instrument concerning real or personal property may be recorded if it has been acknowledged, sworn to with a proper jurat, or proved according to law." Although recordation of a security instrument in real property is not mandatory, once a security interest is recorded, "[t]o release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded."[1]

14.    Once properly filed, a mortgage or deed of trust is "notice to all persons of the existence of the instrument," protects the mortgagee's (lender's) security interest against creditors of the mortgagor, and places subsequent purchasers on notice that the property is encumbered by a mortgage lien. Unless the mortgage or deed of trust is recorded, the "mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice."[2]

15.    Section 11.004 of the Texas Property Code requires that county clerks in the State of Texas: (1) correctly record, as required by law, within a reasonable time after delivery, any instrument authorized or required to be recorded in that clerk's office that is proved, acknowledged, or sworn to according to law; (2) give a receipt, as required by law, for an instrument delivered for recording; (3) record instruments relating to the same property in the order the instruments are filed; and (4) provide and keep in the clerk's office the indexes required by law.

---

[1]  TEX. LOC. GOV'T CODE § 192.007.

[2]  TEX. PROP. CODE § 13.001(a).

16.     Section 193.003 of the Texas Local Government Code requires that a county clerk maintain "a well-bound alphabetical index to all recorded deeds, powers of attorney, mortgages, and other instruments relating to real property" with "a cross-index that contains the names of the grantors and grantees in alphabetical order." A "Grantee" is the person to whom an interest in real property, including a security interest, is granted pursuant to the instrument being recorded. For well over 150 years, deeds of trust tendered for filing in Texas identified such person as the "lender," "beneficiary," or "grantee."

## C.     The MERS System

17.     The MERS business plan, as envisioned and implemented by Wall Street,[3] is based in large part on amending the traditional model of recording security interests in real property and changes thereto and introducing a third party into the equation—MERS.   The motivation for creating MERS was Wall Street's desire to alleviate the "inconvenience" of the public recording system and create its own privately owned shadow electronic recording system - the MERS System – to increase the velocity and ease with which mortgages could be bought and sold.   In the words of one court, the MERS System was designed "as a replacement for our traditional system of public recordation of mortgages."[4] The MERS System fails to comply with Texas law.

18.     Mortgage-backed securities ("MBS") are securities that give the holders the right to receive the principal and interest payments from borrowers on a particular pool of mortgage loans. Before the advent of MERS, government sponsored enterprises such as FANNIE MAE and FREDDIE MAC were the largest issuers of MBS. Wall Street decided that it wanted to get more involved in the business of selling MBS. To facilitate

---

[3]  As used herein, "Wall Street" includes BOA.

[4]  *In Re Agard*, 444 BR 231, 247 (E.D.N.Y. 2011).

the issuance of MBS, and increase the velocity with which mortgages could be bought and sold, Wall Street needed to create a mechanism that would enable it to buy and sell mortgages and mortgage servicing rights multiple times, packaged with tens of thousands of other mortgages, without the "inconvenience," expense, or time associated with recording each transfer. In order to issue an MBS, however, the issuer was and is required by law and industry standards to record (and pay recording fees on) every assignment of a mortgage loan from origination through deposit in a securitization trust. Faced with this dilemma, Wall Street, including Defendant BOA, simply wrote its own rules and created MERSCORP and MERS, ignoring property laws throughout the United States, including Texas.

       1.    **How MERS Works**

19.    MERS is a subsidiary of MERSCORP. MERSCORP is owned by various mortgage banks, title companies, and title insurance companies, including Defendant BOA. When a lender which is a "member" of MERS makes a mortgage loan, the lender instructs the title company to show not only the lender but also MERS, as "mortgagee" under a mortgage and "beneficiary" under a deed of trust. MERS then shows up in the deed records as a "grantee."

20.    MERS and its members, including BOA, agree amongst themselves that: 1) sales or transfers of mortgage loans amongst MERS members will not thereafter be recorded in the real property records; 2) MERS will remain as the "grantee" of the security interest created by the original deed of trust; and 3) subsequent sales or transfers amongst MERS members will be tracked electronically in the MERS System. The purchaser of the note, or successor servicer, agrees at the time of acquisition of its rights to notify MERS when the note is paid so that MERS can "release" its lien and the lien of the original lender. MERS has described its role as follows:

[MERS] and MERSCORP, Inc. were developed by the real estate industry to serve as the mortgagee of record and operate an electronic registration system for tracking interests in mortgage loans. . . Specifically, the MERS® System tracks the transfers of mortgage servicing rights and beneficial ownership interests in mortgage loans on behalf of MERS Members.

The promissory note is a negotiable instrument under Article 3 of the Uniform Commercial Code, and originating lenders routinely sell these notes on the secondary markets to investors. "The ability of lender to replenish their capital by selling loans in the secondary market is what makes money accessible for home ownership."

****

At the origination of the loan by a lender who is a MERS Member, the lender takes possession of the note (and becomes the holder of the note), and the borrower and lender designate MERS (as the lender's nominee) to serve as the mortgagee or beneficiary of record. The lender's secured interest is thus held by MERS. . . Rules, which are incorporated into all MERS' agreements with its members, provide that members "shall cause Mortgage Electronic Registration System, Inc. to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System."

Accordingly, when a MERS Member [including BOA] originates a loan, the original lender and the borrower contractually agree in the mortgage that MERS will be the mortgagee and will serve as nominee for the lender and its successors and assigns.  In the event of a default on the loan, MERS as the beneficiary or mortgagee, is authorized to foreclose on the home. After the borrower signs the mortgage agreement, it is recorded in the public, local land records with MERS as the named beneficiary or mortgagee.

The MERS Member then registers the mortgage loan information from the security instrument on the MERS® System. When the beneficial interest in a loan is sold, the promissory note is still transferred by an endorsement and delivery from the buyer to the seller, but MERS Members are obligated to update the MERS® System to reflect the change in ownership of the promissory note.

So long as the sale of the note involves a MERS Member, MERS remains the named mortgagee of record, and continues to act as the mortgagee, as the nominee for the

new beneficial owner of the note (and MERS' Member). The seller of the note does not and need not assign the mortgage because under the terms of that security instrument, MERS remains the holder of title to the mortgage, that is, the mortgagee, as the nominee for the purchaser of the note, who is then the lender's successor and/or assign. Accordingly, there is no splitting of the note and mortgage for loans in the MERS® System.  If, however, a MERS' Member is no longer involved with the note after it is sold, an assignment from MERS to the party who is not a MERS Member is executed by MERS, that assignment is recorded in the County Clerk's office where the real estate is located, and the mortgage is "deactivated" from the MERS® System.[5]

**2.**   **The MERS Fiction**

21.    According to MERS, it is the "mortgagee" or "beneficiary," of record in more than 70 million mortgages filed in the deed records of counties throughout the United States, including millions BOA recorded or caused to be recorded. MERS, however, does not actually have a security interest the real property that is the subject of such mortgages or deeds of trust. In MERS's own words:

> MERS has no interest at all in the promissory note evidencing the mortgage loan. MERS has no financial or other interest in whether or not a mortgage loan is repaid. . .
>
> MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note. . . . MERS is not the owner of the servicing rights relating to the mortgage loan and MERS does not service loans. **The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note.** In essence, MERS immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur. (citation omitted).[6]

---

[5]  *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking and Fin.*, 704 N.W.2d 784 (Neb. 2005), Brief of Appellant at 11-12 (citations omitted).

[6]  *Mortgage Electronic Registration Systems, Inc. Nebraska Dept. of Banking and Fin.*, 704 N.W.2d 784 (Neb. 2005), Brief of Appellant at 11-12 (emphasis added).  MERS does not explain how it can be a "mortgage lien" holder or how it can "inoculate" loans "against future assignments" while simultaneously insisting that "MERS is not the owner of the promissory note

22.    MERS has also admitted that under its agreement with its mortgagee-lender members, MERS "**cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents**" and has "**no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.**"[7]

23.    At this point one might ask how MERS can be the "mortgagee" in a mortgage or "beneficiary" of a deed of trust as to which the beneficial interest "runs to the owner and holder of the promissory note."[8] Plainly, it cannot. As one court has observed:

> MERS and its partners made the decision to create and operate under a business model that was designed in large part to avoid the requirements of the traditional mortgage recording process. This Court does not accept the argument that because MERS may be involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law.
>
> ****
>
> Aside from the inappropriate reliance upon the statutory definition of "mortgagee," MERS's position that it can be both the mortgagee and an agent of the mortgagee is absurd, at best.
>
> ****
>
> This Court finds that MERS's theory that it can act as a "common agent" for undisclosed principals is not supported by the law. The relationship between MERS and its lenders

---

secured by the mortgage and has no rights to the payments made by the debtor on such promissory note" and "is not the owner of the servicing rights relating to the mortgage loan."

    Also in question in cases pending in other jurisdictions is MERS's assertion that it has the authority to assign the note and mortgage to subsequent purchasers and the authority to appoint substitute trustees under the deeds of trust in which MERS appears as the "beneficiary" or "mortgagee."

    [7]  *Id.* at 10 (emphasis added).

    [8]  *Id.* at 11-12.

and its distortion of its alleged "nominee" status was appropriately described by the Supreme Court of Kansas as follows: "The parties appear to have defined the word [nominee] in much the same way that the blind men of Indian legend described an elephant – their description depended on which part they were touching at any given time." *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166-67 (Kan. 2010).[9]

24.     Deed records in Texas were created to provide public notice of the identity of the person whose interest is protected by a deed of trust. Once properly filed, a deed of trust is "notice to all persons of the existence of the instrument," protects the lender's security interest against creditors of the grantor, and places subsequent purchasers on notice that the property is encumbered by a security interest.

25.     In order to be shown in deed records in Texas as a "grantee," and therefore a party whose interest is protected by recording, one must ordinarily be identified in a deed of trust as a "lender," "mortgagee," "grantee," or "beneficiary" of the deed of trust. As noted above, however, MERS has admitted that it is none of these. According to MERS:

> MERS has no interest at all in the promissory note evidencing the mortgage loan. MERS has no financial or other interest in whether or not a mortgage loan is repaid. . .
>
> MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note. . . MERS is not the owner of the servicing rights relating to the mortgage loan and MERS does not service loans. **The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note.** In essence, MERS immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur. (citation omitted).[10]

---

[9]  *In Re Agard*, 444 BR 231 (E.D.N.Y. 2011).

[10]  *Mortgage Electronic Registration Systems, Inc. Nebraska Dept. of Banking and Fin.*, 704 N.W.2d 784 (Neb. 2005), Brief of Appellant at 11-12 (emphasis added).

26.     Here is MERS" conundrum: if MERS is acting only as a "nominee" or "agent" of the lender, MERS itself has no security interest in the real property that is the subject of the deed of trust and therefore MERS  has no rights which qualify it to assert that it is a beneficiary of the deed of trust. But unless MERS identifies itself as a "beneficiary," MERS will not be denominated as a "grantee" in the deed records. And unless MERS is identified as a "grantee" in the deeds records, the MERS System does not work because the protections of the recording statutes are not extended to MERS. For Wall Street, the solution was simple — ignore the law and identify MERS as the "beneficiary" of an instrument in which MERS holds no beneficial interest. In that way, county clerks, including the Nueces County Clerk, would identify MERS as a "grantee" in their deed records, and MERS, BOA, and other members of the mortgage banking industry could take advantage of the recording system.

27.     Here's how it works: The deeds of trust in issue here generally state that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."[11] Of course, a lender is free to appoint an agent. As noted above, however, if this was MERS' only status as denominated in the deeds of trust, it would ordinarily not be indexed as a "grantee" in its own right. Wall Street fixed this problem by adding an untruth to each such deed of trust – that "MERS is the beneficiary under this Security Instrument."[12]

28.     The subject deeds of trust contain other untruths. For example, each recites that the "[b]orrower understands and agrees that MERS holds only legal title to

---

[11] *See, e.g.*, Exhibit 1, April 20, 2012 Deed of Trust, Nueces County Clerk Document No. 2012015647 at 2; Exhibit 2, April 16, 2012 Deed of Trust, Nueces County Clerk Document No. 2012015436 at 2; Exhibit 3, September 16, 2006 Deed of Trust, Nueces County Clerk Document No. 2006049165 at 1.

[12] Exhibit 1 at 2; Exhibit 2 at 2; Exhibit 3 at 1.

the interests granted by Borrower in this Security Instrument . . . ."[13] Texas, however, has been a lien theory state for well over 150 years - a deed of trust does not transfer legal title to anything, it creates a lien.[14] Moreover, any assertion by Defendants that the lien created by the subject deeds of trust is the "interest" as to which MERS holds legal title would clearly be a transparent fiction – the subject deeds of trust expressly provide that "[t]his Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note."[15] For these reasons, MERS cannot be the holder of "legal title" to the security interest created by the deed of trust, just as it has no beneficial interest in the security interest created. This fact is further underscored by MERS own admissions that it "has no interest at all in the promissory note evidencing the mortgage loan;" "has no financial or other interest in whether or not a mortgage loan is repaid;" "is not the owner of the promissory note secured by the mortgage;" "has no rights to the payments made by the debtor on such promissory note;" "is not the owner of the servicing rights relating to the mortgage loan;" "does not service loans;" and that "[t]he beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note."[16]

---

[13]  Exhibit 1 at 3; Exhibit 2 at 3; Exhibit 3 at 3.

[14]  *See Flag-Redfern,* 744 S.W.2d at 8 (Tex. 1987) (A deed of trust does not convey legal title - the legal title remains in the mortgagor as long as the debt is outstanding.); *Rudolph v. Hively*, 188 S.W. 721, 722-23 (Tex. Civ. App. — Amarillo 1916, writ ref.) ("The well-established rule in this state is that a deed of trust is simply a security for the debt, and before foreclosure vests no title in the beneficiary.").

[15]  Exhibit 1 at 2; Exhibit 2 at 3; Exhibit 3 at 2 (emphasis added).

[16]  *Mortgage Electronic Registration Systems, Inc. Nebraska Dept. of Banking and Fin.,* 704 N.W.2d 784 (Neb. 2005), Brief of Appellant at 11-12 (emphasis added).

29.     Defendants' misconduct also extends to the recording of hundreds of thousands of instruments falsely denominating MERS in a capacity, i.e., "Grantor," "Lender," "holder of Note and Lien,"  "the legal and equitable owner and holder" of promissory notes, etc., which results in MERS being indexed incorrectly as a "Grantor" in the statutory Grantor/Grantee indexes of Texas counties, including Nueces County.

30.     MERS members notify MERS when a mortgage loan registered on the MERS System is sold, transferred, or paid. The reporting member then files a copy of a release or assignment in the deed records, acting on behalf of MERS. For example, in a September 24, 2010 Deed of Release, <u>MERS</u> is identified as the "Lender" in a Deed of Release and <u>MERS</u> purportedly certifies that "the Deed of Trust has been fully paid, satisfied or otherwise discharged."[17] MERS, however, was not the lender in whose favor the referenced deed of trust created a security interest perfected by recordation.[18] Indeed, the <u>actual</u> lender and <u>actual</u> beneficiary, Extraco Banks, N.A. d/b/a Extraco Mortgage ("Extraco"), does not appear in the Deed of Release. Moreover, in this instance, MERS does not appear in the Nueces County online statutory Grantor/Grantee index as a "grantee" of the deed of trust, only Extraco does. An online search of the chain of title would, therefore, show a gap between Extraco (indexed as the "grantee") of the deed of trust and MERS (indexed as the "grantor" in the Deed of Release). Multiply this confusion times 70+ million mortgages and 40+ million assignments, transfers, and releases of lien and one gets an idea of why it can be said without fear of contradiction that the MERS System has collapsed the real property recording system in the United States, Texas, and Nueces County.

---

[17] Exhibit 4, September 24, 2010 Deed of Release, Nueces County Clerk Document No. 2010035917.

[18] Exhibit 5, February 24, 2010 Deed of Trust, Nueces County Clerk Document No. 2010007569.

31.     As demonstrated by the criminal and civil penalties for filing false or deceptive real estate liens, Texas public policy favors a reliable functioning public recordation system to avoid destructive breaks in title, confusion as to the true identity of the holder of a note, fraudulent foreclosures, and uncertainty as to title when real property is sold.  The MERS System has all but collapsed this system throughout the United States, including Texas.[19]

## V.
## CAUSE OF ACTION

32.     Defendants filed or caused to be filed deeds of trust, releases, assignments, transfers, and other instruments containing legally and factually false statements in violation of Texas law.

33.     Defendants released, transferred, assigned or took other actions relating to

---

[19]     To understand the scale and seriousness of the institutional failures of MERS and MERSCORP and the role of these entities in creating a morass of the U.S. recordation systems, one need look no further than the disaster MERS has made of the foreclosure process. On April 12, 2011, MERSCORP and MERS entered into a *Consent Order* with several federal agencies. According to the findings contained in the *Consent Order*, MERS and MERSCORP "(a) have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members; (b) have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to Examined Members" and, that "MERS and MERSCORP engaged in unsafe or unsound practices that expose[d] them and Examined Members to unacceptable operational, compliance, legal, and reputational risks." *Consent Order*, April 12, 2011, OCC No. AA-EC-11-20; Board of Governors Docket Nos. 11-051-B-SC-1 and 11-051-B-SC-2; FDIC-11-194b; OTS No. 11-040; FHFA No. EAP-11-01 at 4-5.

Members of the mortgage banking industry also recently agreed to a $25 billion settlement with the attorneys general of 49 states for claims arising out of unlawful foreclosure practices.

In response to the hundreds of cases filed nationwide against MERSCORP and MERS for wrongful foreclosure, MERSCORP and MERS recently promulgated new policies that include the mandate that "[n]o foreclosure proceeding may be initiated, and no Proof of Claim or Motion for Relief from Stay (Legal Proceedings) in a bankruptcy may be filed, in the name of Mortgage Electronic Registration Systems, Inc. (MERS)."

such recorded instruments without ensuring that such action or actions were filed, registered, or recorded using another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded."[20] Such conduct caused a reduction in the revenue that Plaintiff would have collected had Defendants complied with Texas law and recorded all subsequent transfers, assignments, transfers, and other activities related to the original recorded instruments.

**A.**     **Violation of § 12.002 of the Texas Civil Practice & Remedies Code**

34.     Section 12.002 of Chapter 12 of the Texas Civil Practice & Remedies Code ("***CPRC***") provides:

> (a)     A person may not make, present, or use a document or other record with:
>
> > (1)     knowledge that the document or other record is a fraudulent court record or a fraudulent lien[21] or claim against real or personal property or an interest in real or personal property;
> >
> > (2)     intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
> >
> > (3)     intent to cause another person to suffer:
> >
> > > (B)     financial injury . . .
>
> (b)     A person who violates Subsection (a) or (a-1) is liable to each injured person for:
>
> > (1)     the greater of:

---

[20]  Tex. Loc. Gov't Code § 192.007.

[21]  Section 12.001 of the CPRC provides that "(3) 'Lien' means a claim in property for the payment of a debt and includes a security interest." The subject instruments do not create a "lien" in favor of MERS.

> > (A)    $10,000; or
>
> > (B)    the actual damages caused by the violation;
>
> (2)    court costs;
>
> (3)    reasonable attorney's fees; and
>
> (4)    exemplary damages in an amount determined by the court.

35.    Section 12.003 of the CPRC provides that a district attorney, criminal district attorney, county attorney with felony responsibilities, or county attorney "may bring an action to enjoin violation of this chapter or to recover damages under" this chapter. . . .[22] A federal court sitting in diversity applies the substantive law of the forum state. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). Under Texas law, where a statute provides for a right to an injunction for a violation, a party does not have to establish the general equitable principles for a temporary injunction. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002); *Republic Ins. Co. v. O'Donnell Motor Co.*, 289 S.W. 1064, 1066 (Tex. Civ. App.-Dallas 1926, no writ). When an applicant relies upon a statutory source for injunctive relief, the statute's express language supersedes the common law injunctive relief elements such as imminent harm or irreparable injury and lack of an adequate remedy at law. *West v. State*, 212 S.W.3d 513, 519 (Tex. App.-Austin 2006, no pet.).

36.    As set forth hereinabove, Defendants filed or caused to be filed the instruments as described herein which falsely represent that MERS has an interest in real property, e.g., as "Grantee," "beneficiary," "Grantor," "Lender," "holder of Note and Lien," "the legal and equitable owner and holder" of promissory notes," "owner and holder" of a deed of trust, etc., or falsely represent MERS' role or status in the

---

[22] TEX. CIV. PRAC. & REM. CODE § 12.003(a)(1)-(5).

transactions evidenced by such instruments, which results in MERS being indexed incorrectly as a "Grantee" or "Grantor" in the real property records of Plaintiff; Defendants knew at the time of filing that such instruments falsely represented MERS's interest in the real property that is the subject of such instruments or role or status in the transactions evidenced by such instruments; Defendants filed or caused to be filed the instruments with the intent that they be given the same legal effect as an instrument evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and intended by such conduct to financially injure Plaintiff by avoiding the costs and filing fees associated with filing, registering, or recording subsequent releases, transfers, assignments, or other action relating to such instrument as required by Texas law.

37.     Defendants' conduct described herein violated section 12.002 of the CPRC for which Plaintiff seek judgment against Defendants, jointly and severally, in the amount of $10,000 per violation, together with attorney's fees, court costs, and exemplary damages in an amount determined by the Court.

38.     Pursuant to Rule 65 of the Federal Rules of Civil Procedure ("FRCP"), Plaintiff also seeks a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and those in active concert or participation with them from recording or attempting to record instruments in the real property records of Nueces County which falsely represent that MERS has an interest in real property that it does not have or falsely represent MERS' role or status in the transactions evidenced by such instruments.

**B.      Violation of Texas Local Government Code § 192.007**

39.     For almost 300 years, common law and statute have required or permitted the recording of instruments affecting title to real property for the primary purpose of

giving notice of their contents to the public. One of the primary purposes of recording documents affecting the title to real property is to make information pertaining to that property available to the general public and thus to protect persons from fraud. And because real estate is so tightly woven into the fabric of the U.S. financial system, stability and certainty regarding titles to real property is essential to the efficient functioning of the markets.

40.     In order to perfect a security interest in real property in Texas, the instrument creating the security interest must be filed of record. But filing, generally, is not mandatory. Once a record of a security interest is filed of record, however, it must by statute be kept current in order to ensure continued accuracy of the real property records.

41.     Section 192.007 of the Texas Local Government Code provides:

**TEX. LOC. GOV'T, SEC. 192.007**
**Records of Releases and Other Actions**

(a)     To release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.

(b)     An entry, including a marginal entry, may not be made on a previously made record or index to indicate the new action.

42.     Defendants violated section 192.007 of Texas Local Government Code by failing to record all releases, transfers, assignments, and other actions relating to the instruments Defendants recorded or caused or allowed to be recorded in the real property records of Nueces County in which: 1) MERS is identified as having an interest in real property that it does not have; or 2) which falsely represent MERS' role or status

19

in the transactions evidenced by such instruments.

43.     Damages to Plaintiff have been proximately caused by the conduct of Defendants as described herein, for which Plaintiff sues, measured by the filing fees that would have been received by Plaintiff had all of the releases, transfers, assignments and other actions relating to the deeds of trust and other instruments described herein been filed, registered, or recorded in the real property records of Plaintiffs in the same manner as the original instrument was required to be filed, registered, or recorded.

44.     Pursuant to Rule 65 of the FRCP, Plaintiff also seeks a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and those acting in concert and participation with them from failing to record all releases, transfers, assignments, and other actions relating to the instruments Defendants recorded or caused or allowed to be recorded in the real property records of Nueces County in which: 1) MERS is identified as having an interest in real property that it does not have; or 2) which falsely represent MERS' role or status in the transactions evidenced by such instruments. In the absence of a temporary restraining order, preliminary injunction, and permanent injunction, Nueces County will be irreparably harmed because Defendants will continue their unlawful failure to record instruments required by law to be recorded, thereby further destroying the integrity of the real property records of Nueces County.

**C.     <u>Unjust Enrichment</u>**

45.     Defendants MERS and MERSCORP have been unjustly enriched by their conduct described above by their receipt of fees charged to MERS's members for MERS to track unrecorded assignments, transfers, releases, and other actions related to instruments filed, registered, or recorded in the real property records of Nueces County.

46.     Damages to Plaintiff have been proximately caused by Defendants MERS' and MERSCORP's conduct described herein, measured by the filing fees that would have been received by Plaintiff had all of the unrecorded assignments, transfers, releases, and other actions related to instruments filed, registered, or recorded in the real property records of Nueces County described herein been recorded or, in the alternative, as measured by the fees received by MERSCORP and MERS for tracking the unrecorded assignments, transfers, releases, and other actions related to instruments filed, registered, or recorded in the real property records of Nueces County described herein, for which damages Plaintiff seeks judgment of the Court.

47.     Defendant BOA has been unjustly enriched by avoiding the filing fees associated with recordation of transfers that would otherwise have been recorded, but for its participation in the MERS System and violation of Texas law.

48.     Damages to Plaintiff have been proximately caused by Defendant BOA's conduct in failing to record all assignments, transfers, releases, and other actions related to instruments BOA filed, registered, or recorded, or caused to be filed, registered or recorded, in the real property records of Nueces County. The measured of damages is the filing fees that would have been received by Plaintiff had all of the unrecorded assignments, transfers, releases, and other actions related to instruments BOA filed, registered, or recorded, or caused to be filed, registered, or recorded, in the real property records of Nueces County been recorded, for which damages Plaintiff seeks judgment of the Court.

**D.     Declaratory Judgment**

49.     Plaintiff seeks a judicial declaration that the filing of deeds of trust identifying MERS as a "mortgagee" or "beneficiary" under the deed of trust, when in fact MERS has no beneficial interest in the note secured by such deed of trust,

constitutes a violation of section 51.901 of the Texas Government Code.

50.     Plaintiff also seeks a judicial declaration that the filing of instruments which identify MERS as a "Grantor," "Lender," "holder of Note and Lien," "the legal and equitable owner and holder" of promissory notes, etc., which results in MERS being indexed incorrectly as a "Grantor" in the statutory Grantor/Grantee index of Texas counties, including Nueces County, constitutes a violation of section 51.901 of the Texas Government Code.

51.     Plaintiff also seek a judicial declaration that the each Defendant is liable for having failed to properly record all releases, transfers, assignments, or other actions relating to instruments Defendants filed or caused to be filed, registered, or recorded in the deed records of Plaintiff in the same manner as the original instrument was required to be filed, registered, or recorded.

E.     **Request for Injunctive Relief**

52.     Pursuant to Rule 65 of the FRCP, Plaintiff seeks a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and those in active concert or participation with them from

> a.     filing or causing to be filed, any instrument in the deed records of Nueces County identifying MERS or any other person or entity as a "beneficiary" of any deed of trust when MERS or such person does not have a beneficial interest or other legally sufficient interest in the property made the subject of the deed of trust; and
>
> b.     filing or causing to be filed, any instrument in the deed records of Nueces County identifying MERS or any other person or entity as a "Grantor," "Lender," "holder of Note and Lien," "the legal and equitable owner and holder" of promissory notes, "beneficiary" of a deed of trust, or in any other capacity which results in MERS or any other person being indexed incorrectly as a "Grantor" when MERS or such person does not actually have the interest it purports in such

instrument to have.

53.     Plaintiff seeks an order of this Court requiring Defendants, jointly and severally, to correct the false and deceptive filings described herein by causing the recordation of corrective instruments setting forth the entire chain of title for each instrument described herein.

**F.    Exemplary Damages – All Defendants**

54.     The conduct of each Defendant as set forth herein constituted fraud, malice, or gross negligence such that each Defendant is liable for exemplary damages for which Plaintiff seeks judgment of the Court.

**VI.**
**CONSPIRACY**

55.     Defendants and each of them conspired together in the actionable conduct alleged herein so as to make each of MERSCORP, MERS, and BOA liable for all damages suffered by Plaintiff. The conspiracy included these Defendants establishing an object to be accomplished (increasing the velocity at which mortgage loans could be traded and saving filing fees); a meeting of minds on the object or course of action (establishment and operation of the MERS System); one or more unlawful, overt acts (recordation of the instruments as to which complaint is made herein); and damages to Plaintiff as set forth herein proximately caused by the Defendants' conduct as set forth herein.

**VII.**
**JURY DEMAND**

56.     Plaintiff requests trial by jury.

**X.**
**PRAYER**

57.     Wherefore, premises considered, Plaintiff requests that Defendants be

cited to appear and, upon trial of this matter, Plaintiff be awarded damages as set forth above, costs of bringing this action, including all court costs, attorney's fees, and related expenses of bringing the action (including investigative expenses), pre- and post-judgment interest at the highest rate allowed by law, and for such other and further relief, in law and in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**WATTS GUERRA CRAFT, LLP**

By:    /s   Mikal C. Watts
        Mikal C. Watts
        Attorney-in-Charge
        State Bar No. 20981820
        Federal Bar No. 12419
        Email: mcwatts@wgclawfirm.com
        Anthony E. Pletcher
        State Bar No. 16069800
        Federal Bar No. 2842
        Email: tpletcher@wgclawfirm.com
        500 N. Water Street, Suite 1200
        Corpus Christi Texas 78401
        (361) 887-0500
        (361) 887-0055 [Fax]

**HILLIARD MUNOZ GONZALES, LLP**

        /s   Robert C. Hilliard
        Robert C. Hilliard
        State Bar No. 09677700
        Federal Bar No. 5912
        Email: bobh@hmglawfirm.com
        John Martinez
        Federal Bar No. 23612
        Email: john@hmglawfirm.com
        719 S. Shoreline Boulevard, Suite 500
        Corpus Christi, Texas 78401
        (361) 8821612
        (361) 882-3015 [Fax]

**ATTORNEYS FOR PLAINTIFF**