**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **NUECES COUNTY, TEXAS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:12-CV-00131** |
| | § | |
| **MERSCORP HOLDINGS, INC.,** | § | |
| **MORTGAGE ELECTRONIC** | § | |
| **REGISTRATION SYSTEMS, INC., and** | § | |
| **BANK OF AMERICA, N.A.,** | § | |
| | § | |
| **Defendants.** | § | |

---

### ORDER

---

Before the Court is Defendants' motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, Defendants' memorandum in support, and Defendants' supplemental memorandum. (D.E. 26, 27, 48.)  The Court held a hearing on the motion to dismiss and heard oral arguments from attorneys for both sides on February 8, 2013.  For the reasons set forth below, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Court concludes that Plaintiff alleged sufficient facts to give rise to a plausible claim for relief with regard to Plaintiff's causes of action alleging violations of Section 12.002 of the TEX. CIV. PRAC. & REM. CODE, unjust enrichment, and fraudulent misrepresentation.  The Court retains these causes of actions.  Plaintiff's remaining causes of action are dismissed for failure to state a claim upon which relief may be granted.  With regard to Plaintiff's conspiracy cause of action, the Court grants Plaintiff leave to file an amended complaint asserting additional

allegations demonstrating a conspiracy among Defendants within fourteen (14) days from the filing of this Order.

## BACKGROUND

The Court's analysis is based on the factual allegations set forth in Plaintiff's First Amended Complaint (FAC). (D.E. 39.)  The following is a brief summary of the relevant facts from the FAC, which for purposes of this motion must be accepted as true and viewed in the light most favorable to Plaintiff.

This lawsuit was brought by Nueces County, Texas (County) and seeks monetary damages and injunctive relief against Defendants in order to "clean up the mess" Defendants have created in the County's real property records.  Defendants MERSCORP Holdings, Inc. (MERSCORP) and Mortgage Electronic Registration Systems, Inc. (MERS) own and operate the MERS system.  MERS is a wholly-owned subsidiary of MERSCORP.  The MERS electronic mortgage tracking system was created by members of the mortgage banking industry, including Defendant Bank of America, N.A. (BANA), to facilitate the rapid transfer of mortgage loans between members of the mortgage industry and to avoid the need to record these transfers in the county property records.  Under the MERS system, transfers between MERS members are tracked electronically by MERS, and this information is made available to MERS members through the MERS website.  Plaintiff alleges that the MERS system is full of inaccuracies and that Plaintiff has been injured by being deprived of millions of dollars in recording fees and by the damage done to the integrity of the County's real property records.

Under the MERS system, when a lender who is a MERS member makes a mortgage loan, the title company is instructed to list MERS as the "mortgagee" or the "beneficiary" on the instrument securing the loan.  This causes MERS to be listed as the "grantee" when the security

2

instrument (deed of trust) is recorded in the county property records.  MERS members have agreed amongst themselves that any subsequent transfers of the mortgages between MERS members will not be recorded in the county property records but tracked instead on the MERS system.  As long as the mortgages are held by a MERS member, MERS continues to be listed as the grantee of the security interest in the county's property records.  Thus, despite the fact that a mortgage may be transferred many times between MERS members, there is no record of these transfers in the county property records.

MERS is not the servicer of the loans, it does not have any right to receive payments on the loans, and it has no financial stake in whether the loans are repaid.  In the event of default by the borrower, MERS may have the right to foreclose on the property as an agent or nominee of the lender under the terms of the security agreement; however, MERS has no interest in any proceeds from a foreclosure sale.  Accordingly, MERS has no beneficial interest in the loans registered on the MERS system, and its relationship to the borrowers and lenders is merely that of an agent or nominee of the MERS members.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court must examine the complaint in the light most favorable to Plaintiff, accepting all allegations as true and drawing all reasonable inferences in favor of Plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995).  The Court need not, however, accept as true legal conclusions masquerading as factual allegations, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions to give rise to a reasonable inference that

Defendants are liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claims should not be dismissed. *Id.* at 555–56.  This test of pleadings under Rule 12(b)(6) is devised to balance Plaintiff's right to redress against the interests of the parties and the courts in minimizing expenditures of time, money, and resources. *Id.* at 557–58.

## ANALYSIS

### A.    Standing

Defendants argue that Plaintiff lacks Article III standing to assert its claims because it has failed to demonstrate an injury-in-fact. (D.E. 27 at 32.)  In addition to lost filing fees, Plaintiff alleges the County has suffered a degradation in its property records as a result of Defendants' actions. (FAC ¶¶ 3, 30, 31, 42, 50.)  These allegations demonstrate a concrete and particularized injury, that is actual or imminent, and that is likely to be redressed by a decision in Plaintiff's favor. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("the irreducible constitutional minimum of standing contains three elements").  At this stage of the litigation, Plaintiff's allegations are sufficient to establish standing. *See El Paso Cty. v. Bank of New York Mellon*, No. A-12-CA-705-SS, 2013 WL 285705, at *2 (W.D. Tex. Jan. 22, 2013); *Jackson Cty. v. Merscorp, Inc.*, --- F.Supp.2d ----, 2013 WL 142882, at *3 (W.D. Mo. Jan. 14, 2013); *Fuller v. Mortgage Electronic Registration Systems, Inc.*, No. 3:11-cv-1153-J-20MCR, D.E. 34 at 12–13 (M.D. Fl. June 2, 2012); *Christian Cty. Clerk v. Mortgage Electronic Registration System, Inc.*, No. 5:11-CV-00072-M, 2012 WL 566807, at *2 (W.D. Ky. Feb. 21, 2012).

### B.        Texas Civil Practice and Remedies Code § 12.002

Plaintiff alleges in FAC ¶¶ 40–44 that Defendants violated Section 12.002 of the Texas Civil Practice and Remedies Code which prohibits the filing of fraudulent liens or claims against real property.  To establish a claim under Section 12.002, Plaintiff must show that Defendants (1) made, presented, or used a document with knowledge that it was a fraudulent claim against real property; (2) intended the document be given legal effect; and (3) intended to cause a person financial injury. *Gray v. Entis Mech. Servs., L.L.C.*, 343 S.W.3d 527, 529–30 (Tex. App.— Houston [14th Dist.] 2011, no pet.); *Walker & Assoc. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 848 (Tex. App.—Texarkana 2010, no pet.).  Defendants argue that Plaintiff's Section 12.002 claim fails to satisfy the above elements. (D.E. 27 at 26–32.)

Plaintiff asserts that Defendants filed or caused to be filed security instruments in the County property records which falsely represent that MERS has an interest in certain real property as a grantee, grantor, beneficiary, lender, the holder of notes and liens, and/or the legal and equitable owner and holder of promissory notes and deeds of trust. (FAC ¶ 42.)  Plaintiff alleges that these instruments falsely represented MERS's role or status, and that these false statements resulted in MERS being incorrectly indexed as a grantee and/or grantor in the County's real property records. (*Id.*)  Plaintiff alleges that Defendants knew the instruments were false at the time of filing and that Defendants filed the instruments with the intent they be given the same legal effect as instruments evidencing a valid lien or claim against real property. (*Id.*) Plaintiff alleges that these instruments were filed with the intent to financially injure Plaintiff, as Defendants intended that these false filings would make subsequent filings of releases, transfers, and assignments unnecessary and deprive the County of the filing fees associated with these recordings. (*Id.*)  Plaintiff additionally alleges that the County's property records have been

5

damaged by Defendants' actions and that this has created confusion amongst those who rely on these records. (FAC ¶¶ 3, 30, 31, 42, 50.)

     *1.     T*EX*. P*ROP*. C*ODE *§ 51.0001*

Defendants argue that dismissal of Plaintiff's Section 12.002 claim is warranted because any filings listing MERS as a beneficiary or mortgagee were not fraudulent as Section 51.0001 of the Texas Property Code permits a book entry system, such as MERS, to serve as the record beneficiary of a deed of trust in county property records in Texas. (D.E. 27 at 20–26; D.E. 54 at 10–17.)  Plaintiff responds that Section 51.0001 designates who may undertake a non-judicial foreclosure, but has no bearing on the recording of deeds of trust or whether MERS may serve as the beneficiary of a deed of trust. (D.E. 46 at 17–20.)

The Court's objective in construing a statute should be to determine and give effect to the Legislature's intent. *Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex. 1999).  To determine intent, the Court must first look to the plain language of the statute. *Id*.  The statute's terms should be viewed in the context of the surrounding words and provisions. *Id*.  Regardless of whether or not the statute is ambiguous, the Court may additionally look to the object sought to be obtained by the enactment of the statute; the circumstances under which the statute was enacted; the legislative history of the statute; common law provisions, former statutory provisions, or laws on the same or similar subjects; the consequences of interpreting the statute in a particular way; the administrative construction of the statute; and the title, preamble, and emergency provision. TEX. GOV'T CODE ANN. § 311.023 (West 2005).

Section 51.0001 provides the following definitions of "book entry system" and "mortgagee":

(1)    "Book entry system" means a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns.
. . .

(4)    "Mortgagee" means:

(A)    the grantee, beneficiary, owner, or holder of a security instrument;
(B)    a book entry system; or
(C)    if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record.

TEX. PROP. CODE ANN. § 51.0001(1) and (4) (West 2007).  Plaintiff acknowledges that MERS constitutes a book entry system under the statute, and furthermore, that it is the only national book entry system currently in operation. (D.E. 46 at 18.)  Accordingly, it is undisputed that the above definitions refer to MERS. *See Campbell v. Mortgage Elec. Registration Sys.*, No. 03-11-00429-CV, 2012 WL 1839357, at *4 (Tex. App.—Austin May 18, 2012, pet. den.) (mem. op.) ("MERS is a recognized 'book entry system.' ").

A plain reading of Section 51.0001(4) demonstrates that the Texas Legislature intended to permit lenders to designate MERS as the mortgagee in a deed of trust so that MERS could serve as the nominee or agent of the lender and its successors and assigns.  Numerous Texas courts have also recognized that naming MERS as the mortgagee in a deed of trust so that it may serve as the nominee or agent of the lender and its successors and assigns is permissible under Texas law. *See, e.g.*, *Bexar Cnty. v. Merscorp, Inc.*, No. 5:12-cv-00586-FB, D.E. 36 at 14 (W.D. Tex. Feb. 25, 2013) (M&R issued by Magistrate Judge); *Swim v. Bank of America*, No. 3:11-CV-1240-M, 2012 WL 170758, at *3 n. 25 (N.D. Tex. Jan. 20, 2012) (collecting cases); *Hornbuckle v. Countrywide Home Loans, Inc.*, No. 02-09-00330-CV, 2011 WL 1901975, at *4 (Tex. App.—Fort Worth, May 19, 2011) ("A book entry system such as MERS is included within the definition of 'mortgagee' under Texas law.").  Accordingly, the Court concludes that, under Texas law, it is not fraudulent for lenders to designate MERS as the mortgagee in a deed of trust

for the purpose of MERS serving as the agent or nominee of the lender and its successors and assigns.

However, Plaintiff alleges that Defendants went beyond merely designating MERS as a mortgagee to act as an agent or nominee of its members.  Plaintiff alleges that Defendants additionally filed deeds of trust naming MERS as a beneficiary, grantor, grantee, lender, and holder or owner of promissory notes and deeds of trust for the purpose of MERS being designated as the grantee/grantor on thousands of mortgages in the County's real property records. (FAC ¶¶ 29 and 42.)  Defendants argue that these filings were not fraudulent because Section 51.0001 of the Texas Property Code permits MERS to be listed as the grantee/grantor in the County's real property records. (D.E. 27 at 20–26; D.E. 54 at 10–17.)  Nothing in the plain language of the statute, however, permits MERS to designate itself as a grantee/grantor of record on behalf of its members in the real property records, and there is no indication that this was the Legislature's intent in enacting Section 51.0001(4).

MERS is not a lender, and it does not have the rights of a lender, note holder, or note owner to enforce a promissory note and seek a judgment against a debtor for the repayment of loans.  MERS is merely an agent or nominee of its members, who are banks, lenders, and other financial institutions that hold and trade promissory notes secured by deeds of trust naming them as the lenders and MERS as the beneficiary.  Under the MERS system, member banks and lenders grant MERS certain rights under the deeds of trust, such as the right to conduct a foreclosure sale for properties in default, or to appoint a substitute trustee to conduct a foreclosure.  However, MERS is not entitled to seek personal judgments against the debtors for the repayment of the loans, and MERS has no right to foreclose or take any other actions with respect to the mortgaged properties beyond those specifically permitted in the deeds of trust and

under Texas law. *See Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29–30 (5th Cir. 1992); *Miller v. Homecomings Financial, LLC*, No. 4:11-cv-04416, 2012 WL 3206237, at *3 (S.D. Tex. Aug. 8, 2012); *Millet v. J.P. Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *2 (W.D. Tex. Mar. 26, 2012).

In 2003, the Texas Legislature amended Chapter 51 of the Texas Property Code to provide a broader definition of mortgagee and expand the list of those who could conduct foreclosure sales on behalf of lenders. Over the years, lenders had developed many practices to manage the foreclosure process that were not specifically authorized by statute. While many of these practices were not inconsistent with Chapter 51 of the Property Code, they were also not expressly authorized by the Code. Accordingly, the Legislature sought to amend Chapter 51 to provide more certainty in the foreclosure process. *See* Legislative History and Text of House Bill 1493, including Committee Reports, HB 1493, Leg. Sess. 78(R) (2003), *available at* http://www.legis.state.tx.us/BillLookup/BillNumber.aspx. Specifically, the Legislature sought to give mortgage servicers and other agents or nominees statutory authority to administer the foreclosure process. *Id.*

"Under the Texas Property Code, the only party with standing to initiate a non-judicial foreclosure sale is the mortgagee, or the mortgage servicer acting on behalf of the current mortgagee." *Miller v. Homecomings Financial, LLC*, No. 4:11 cv 04416, 2012 WL 3206237, at *2 (S.D. Tex. Aug. 8, 2012) (citing Tex. Prop. Code §§ 51.0001(3), 51.0001(4), and 51.0025). The term "mortgagee" is broadly defined under Section 51.0001(4), and there are several ways in which an entity can acquire mortgagee status, and consequently, the power to foreclose. *Id.* at n. 4. By including MERS in the definition of "mortgagee," this permitted MERS to act on behalf of its members to conduct foreclosure sales, to authorize mortgage servicers to conduct

9

foreclosure sales, to appoint substitute trustees to conduct foreclosure sales, and to authorize mortgage servicers to appoint substitute trustees. *See* TEX. PROP. CODE §§ 51.0025, 51.0075. All of this greatly expanded the role that MERS, as an agent and nominee of the lender, could play in the foreclosure process.

While it is unquestionable that the Legislature intended to permit MERS to serve as an agent and nominee for lenders so that it could oversee and conduct foreclosures on behalf of its members, nowhere in the 2003 amendments or the legislative history for House Bill 1493 is there any indication that the Legislature sought with this enactment to overturn centuries of legal history and precedent requiring creditors wishing to perfect their interests in land to duly record those interests with the county where the property is located, so that they may be publicly identified in the county's records to all wishing to make an inquiry.[1] MERS' argument is that by defining MERS as a "mortgagee" in the 2003 amendments to Chapter 51, it was the intention of the Legislature to permit MERS to serve as a substitute grantee or grantee of record in the Texas property records for its members. The plain language of the statute does not indicate this intent, and there is no evidence elsewhere in the legislative history to support this theory.

In its definition of a book entry system, Chapter 51 specifically limits MERS to acting as a registry and nominee for those with a beneficial interest in a security instrument:

---

[1]      The adoption of recording acts began in early Colonial America prompted by the need for a system to protect innocent purchasers and creditors from defective titles or a lack of notice concerning prior claims against a property by third parties. *See* POWELL ON REAL PROPERTY § 82.01 (Lexis 2013) (discussing the origins of recording acts in Colonial America). The Texas recording statute, TEX. PROP. CODE § 13.001, similarly aims to protect innocent purchasers and creditors against prior deeds, mortgages, and encumbrances on a property which were not properly recorded and to prevent these innocent purchasers from being injured or prejudiced by their lack of knowledge of competing claims. *Noble Mortg. & Investments, LLC v. D & M Vision Investments, LLC*, 340 S.W.3d 65, 79 (Tex.App.—Houston [1 Dist.] 2011, no pet.) ("the rule voiding unrecorded interests as against subsequent bona fide creditors and purchasers has been around since before Texas was a state"); *Prowse v. Walters*, 941 S.W.2d 223, 228 (Tex. App.—Corpus Christi 1996, writ denied); *Cox v. Clay*, 237 S.W.2d 798, 804 (Tex. Civ. App.—Amarillo 1950, writ ref'd n.r.e.) ("The object of the recording acts is to protect innocent purchasers and incumbrancers against previous deeds, mortgages or the like, which are not recorded and to deprive the holder of prior unregistered conveyances or mortgages of the right which his priority would have given him under the common law.").

> "Book entry system" means a national book entry system for registering a beneficial interest in a security instrument that **acts as a nominee** for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns.

TEX. PROP. CODE § 51.0001(1) (emphasis added). This paragraph clearly limits MERS' role as a national registry and a nominee for the grantees, beneficiaries, owners, and holders of the promissory notes and deeds of trust, directly contravening the expansive interpretation that Defendants propose the Court give Section 51.0001(4).

Under Section 51.0001(4)(A), a mortgagee may be a grantee, beneficiary, owner, or holder of a security instrument. This fits with the traditional use of the term mortgagee. Under Section 51.0001(4)(B), a mortgagee may also be a book entry system such as MERS. This section was added as part of the 2003 amendments to Chapter 51 so that MERS could act on behalf of its members to conduct foreclosure sales, to authorize mortgage servicers to conduct foreclosure sales, to appoint substitute trustees to conduct foreclosure sales, and to authorize mortgage servicers to appoint substitute trustees. However, just because a beneficiary of a security instrument qualifies as a mortgagee under Section 51.0001(4)(A) and MERS qualifies as a mortgagee under Section 51.0001(4)(B), does not mean that MERS is a beneficiary of the security instrument. MERS may be a mortgagee of record for purposes of foreclosure, but not every mortgagee is a beneficiary.[2]

Section 51.0001(4) does not redefine MERS as a grantee, beneficiary, owner, or holder of a security instrument as urged by Defendants; nor does it indicate an intent on the part of the Legislature to permit MERS to be indexed as a substitute grantee in the county property records

---

[2] In the Terms and Conditions MERS provides to its members, MERS identifies itself as a "mortgagee of record," not an actual mortgage. (D.E. 52-1 at 14.) Furthermore, MERS is careful to state that it is a nominee and serves only in an administrative capacity for the beneficial owner or owners of the mortgages. (*Id*. at 14.) Yet, in the attached sample deed of trust prepared by MERS for its members, MERS designates itself as the beneficiary of the security instrument. (*Id*. at 17.)

on behalf of its members.  Defendants' interpretation is inconsistent with the plain language of Section 51.0001(4); it is inconsistent with the Court's interpretation of Section 51.0001(4) in the larger context of Chapter 51; and it is inconsistent with the legislative history of the 2003 amendment to Chapter 51.  This Court cannot simply bend the laws of Texas to fit the MERS system, no matter how ubiquitous it has become. *See Gov't Personnel Mut. Life Ins. Co. v. Wear*, 251 S.W.2d 525, 529 (Tex. 1952) ("the duty of courts [is] to construe a law as written . . . and not look for extraneous reasons to be used as a basis for reading into a law an intention not expressed nor intended to be expressed therein"); *In Re Agard*, 444 B.R. 231 (E.D.N.Y. 2011) ("This Court does not accept the argument that because MERS may be involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law.").  The Court concludes that, for purposes of Chapter 51 of the Texas Property Code, MERS is not a lender, grantee, beneficiary, owner, or holder of security instruments; it is merely the nominee of the MERS members who serve in those capacities.  Accordingly, Section 51.0001 of the Texas Property Code does not shield Defendants from liability.

> 2. *Allegations Demonstrate That Deeds of Trust Are Fraudulent Liens or Claims Against Real Property or an Interest in Real Property*

Defendants assert that MERS is a valid mortgagee or beneficiary, and therefore, Plaintiff's cause of action under Section 12.002 of the Texas Civil Practice and Remedies Code must be dismissed because the MERS security instruments filed with the County do not constitute a "fraudulent lien or claim against real or personal property." (D.E. 27 at 28.)  Plaintiff responds that the recorded security instruments constituted a fraudulent claim against real property because MERS never acquired a security interest in the mortgaged properties, and

therefore, the recordings denominating MERS as a beneficiary of the security instruments are fraudulent. (D.E. 46 at 27–29.)

In Texas, the county clerks are charged with the recording of real property interests and maintaining an alphabetical index of grantors and grantees for all recorded deeds, powers of attorney, mortgages, and other instruments relating to real property. TEX. LOCAL GOV'T CODE § 193.003.  When a document evidencing an interest in property is presented for recordation, the county clerk is required to index it according to the grantor and grantee.  For instance, a deed of trust is indexed based upon the person granting a security interest in the property (the grantor) and the person granted a security interest in the property (the grantee).  It is standard practice in Texas for county clerks to list as grantee the person or entity designated as the beneficiary of the security interest in the deed of trust. (FAC ¶ 16.)  The deeds of trust filed by MERS with the Nueces County Clerk listed MERS as the "beneficiary under this Security Instrument." (*See* FAC ¶ 27 and Pls.' Exs. 1, 2, and 3 to the FAC.)

Plaintiff alleges that by falsely representing to the County that MERS was the beneficiary of the security instruments, Defendants caused MERS to be publicly listed as the grantee and/or grantor in the County's real property records. (FAC ¶¶ 25, 29, 30, and 42.)  Plaintiff alleges that MERS never acquired a lien in the subject properties; that MERS falsely represented that it was a beneficiary, grantee, grantor, lender, or the holder or owner of the security instruments for the properties; and that these misrepresentations were made with the intent that the recorded deeds of trust be given legal effect and cause MERS to be indexed as the grantee and/or grantor for the liens. (FAC ¶¶ 15–33, 42, 44.)

As previously discussed, Chapter 51 of the Texas Property Code defines a mortgagee to include a book entry system such as MERS. TEX. PROP. CODE § 51.0001(4).  Under Chapter 51,

"mortgagee" is a term of art primarily used to designate someone with certain rights in the administration of the foreclosure process. *See, e.g.*, TEX. PROP. CODE §§ 51.0025, 51.0075.  This may be the actual lienholder, or a book entry system such as MERS.  There is no dispute that MERS is a mortgagee, as that term is used in Chapter 51, with the right to act as an agent or nominee of the grantee, beneficiary, owner, or holder of a security instrument in the case of foreclosure. *See* TEX. PROP. CODE § 51.0001(1).  MERS does not, however, hold any beneficial interest in the deeds of trust, and it is not a beneficiary of the deeds of trust.  It is merely an agent or nominee of the beneficiary.

The false assertion of a legal right in property where none exists may constitute a fraudulent lien or claim against real estate in violation of Section 12.002 of the Texas Civil Practice and Remedies Code. *See Casstevens v. Smith*, 269 S.W.3d 222, 234 (Tex. App.— Texarkana, 2008, pet. denied).  By having itself designated as the "beneficiary under the security instrument" in the deeds of trust presented to the County Clerk for recordation in the County's property records, knowing that it would be listed as the grantee of the security interest in the property, it appears that MERS asserted a legal right in the properties.  The Court concludes that, viewing the FAC's allegations in the light most favorable to Plaintiff, one could plausibly infer that the recorded deeds of trust constituted fraudulent liens or claims against real property or an interest in real property.

### 3. *Plaintiff's Allegations Demonstrate an Intent to Cause Financial Harm*

To state a claim under Section 12.002, Plaintiff must allege Defendants acted with the intent to cause financial injury. TEX. CIV. PRAC. & REM. CODE § 12.002(a)(3)(B).  Defendants argue that Plaintiff's cause of action under Section 12.002 must be dismissed because the FAC fails to allege sufficient facts demonstrating intent. (D.E. 27 at 27–28.)  Defendants argue that any failure to file a deed of trust does not trigger a financial injury to the County because the

recording of documents is permissive, and the County does not collect its fees until a document is filed; therefore, if MERS members never presented the deeds of trust for filing, the County is not due any filing fees. (D.E. 27 at 30–31.)

Plaintiff alleges that MERS was established so that its members could avoid recording mortgage assignments with the County and paying the associated filing fees (FAC ¶¶ 2, 3, 17); that to accomplish this, MERS members agreed amongst themselves to list MERS as the beneficiary in their deeds of trust when originating a loan (FAC ¶¶ 19, 20); that this caused MERS to be indexed as the grantee for the mortgages in the property records and enabled subsequent transfers between MERS members to be tracked electronically using the MERS system (FAC ¶¶ 19, 20, 27, 30); and that the result of Defendants' actions has been a dramatic reduction in filings and the collapse of the real property recording system in Nueces County (FAC ¶¶ 30, 31, 33).

If the MERS system did not exist, MERS members would re-file their deeds of trust with the proper county each time the security instruments are transferred in order to remain perfected. Furthermore, as discussed in Subsection D-1, *infra*, once a security instrument is recorded with the county clerk, Section 192.007 of the Texas Local Government Code requires the re-recording of the security instrument each time there is a release, transfer, assignment, or some other action related to the instrument.  Thus, one could reasonably infer from the FAC that the MERS system has caused a reduction in filing fees collected by the County and that the County's property records have been degraded as a result of MERS' activities. (FAC ¶¶ 3, 15–33, 42, 44.)

To establish the intent element of Section 12.002, Plaintiff need only show that Defendants were aware of the potentially harmful effects the filing of the allegedly fraudulent liens would have on the County, not that they actually sought to cause harm to the County

through their actions. *Kingman Holdings, LLC v. BAC Home Loans Servicing, LP*, 2011 WL 1882269, at *5 (E.D. Tex. Apr. 21, 2011); *Hernandez v. Vanderbilt Mortg. and Finance, Inc.*, 2010 WL 3359559, at *4 (S.D. Tex. Aug. 25, 2010) ("Texas courts have interpreted the 'intent' element to require only that the person filing the fraudulent lien be aware of the harmful effect that filing such a lien could have") (citing *Taylor Elec. Services, Inc. v. Armstrong Elec. Supply Co.*, 167 S.W.3d 522, 531–32 (Tex.App.—Ft. Worth 2005, no pet.)).  While Defendants may not have acted with the actual purpose or motive to cause harm to the County, the FAC alleges that through their creation of MERS, Defendants intended to establish their own recording system in order to avoid having to record transfers or assignments with the County and paying the associated filing fees. (FAC ¶¶ 2, 3, 17.)  Accordingly, one can reasonably infer from the allegations set forth in the FAC that Defendants were aware of the harmful effects the fraudulent liens would have on the County.  That is sufficient to establish intent.

### 4.    Section 12.002 Does Not Require County to Allege a Specific Injury

Next, Defendants argue that the Court should dismiss Plaintiff's claim because Plaintiff failed to allege facts demonstrating that it is an injured person under Section 12.002(b) . (D.E. 27 at 30–31.)  Defendants assert that Plaintiff has not and cannot demonstrate a cognizable and compensable injury of which the alleged violation is the proximate cause because the County is prohibited from receiving fees for services it did not perform, and all Plaintiff has alleged is an abstract violation of the statute. (*Id*.)  Plaintiff counters that, by its plain terms, the statute does not require the County to suffer any actual monetary injury, as Section 12.002(b)(1) provides for statutory damages, and Section 12.003 permits a county attorney to bring an action to enjoin a violation of the statute without seeking any damages whatsoever. (D.E. 46 at 29–30.)

By its plain terms, Section 12.002 does not require a person to have suffered any actual, compensable injuries.  Section 12.002(a)(3) requires an intent to cause either physical injury, financial injury, or mental anguish or emotional distress; however, there is no requirement of present injury.  A defendant found to have violated the statute may be liable for actual damages, or statutory damages of $10,000 per violation may be imposed, whichever is greater. TEX. CIV. PRAC. & REM. CODE § 12.002(b)(1).  The Court already determined that Plaintiff alleged an injury-in-fact for purposes of Article III. (See analysis set forth in Subsection A, *supra*.)  Section 12.002 does not require any additional allegations of injury to bring an action asserting a violation of the statute.

>    5.    *County Possesses a Right of Action Under Section 12.002*

Defendants argue that, pursuant to Section 12.003, only the obligor, the debtor, or a person who owns an interest in the real property may bring an action for the presentment of a fraudulent lien or claim against real property under Section 12.002. (D.E. 27 at 31–32.)  The Court disagrees and concludes that the County has a right of action under Section 12.002.

Section 12.003 of the Texas Civil Practice and Remedies Code empowers the following to bring an action to enjoin a violation or to recover damages under Section 12.002:

> (1) the attorney general;
> (2) a district attorney;
> (3) a criminal district attorney;
> (4) a county attorney with felony responsibilities;
> (5) a county attorney;
> (6) a municipal attorney;
> (7) in the case of a fraudulent judgment lien, the person against whom the judgment is rendered; and
> (8) in the case of a fraudulent lien or claim against real or personal property or an interest in real or personal property, the obligor or debtor, or a person who owns an interest in the real or personal property.

TEX. CIV. PRAC. & REM. CODE § 12.003(a)(1)–(8).  The Court does not find any ambiguity in Section 12.003, and must therefore give the statute its plain and common meaning. *See Taylor*

*Elec. Services, Inc. v. Armstrong Elec. Supply Co.*, 167 S.W.3d 522, 530 (Tex.App.—Fort Worth 2005, no pet).

The Court finds that the phrase "in the case of a fraudulent lien or claim against real or personal property or an interest in real or personal property" in subsection 8 does not in any way limit the ability of a county, district, or municipal attorney from bringing an action to enjoin a violation or to recover damages for a violation of Section 12.002. Rather, these words limit when an obligor or debtor, or a person who owns an interest in real or personal property may bring an action. For instance, an obligor or debtor may not bring an action to enjoin or seeking damages for the filing of a fraudulent court record; only in the case of a fraudulent lien or claim does an obligor or debtor have standing to bring a cause of action on his own behalf. *See Vanderbilt Mortg. & Finance, Inc. v. Flores*, 692 F.3d 358, 370 (5th Cir. 2012); *Centurion Planning Corp., Inc. v. Seabrook Venture II*, 176 S.W.3d 498, 505 (Tex.App.—Houston [1 Dist.] 2004, no pet.). Under the plain language of the statute, a county, district, or municipal attorney, however, may seek an injunction or damages in all cases where there has been a violation of Section 12.002.

Moreover, to the extent that Defendants argue the present action must be dismissed because it was filed on behalf of the County by a private attorney employed by the County, the Court finds this argument unavailing. A county, municipal, or district attorney is never named as the plaintiff in an action brought to enforce a local ordinance or state statute. Rather, the action is brought on behalf of the municipality, the county, or the state by a designated government attorney. Thus, when there has been a violation of a law, a right of action accrues to the government, not the individual attorney. Section 12.003 clearly vests the counties with the

power to enforce violations of Section 12.002.  The Court therefore concludes that the County possesses a right of action under Section 12.002.

### 6.    *County Stated Section 12.002 Claims with Sufficient Particularity*

Finally, Defendants argue that Plaintiff failed to plead its claims under Section 12.002 of the Texas Civil Practice and Remedies Code with the particularity required for fraud claims under FED. R. CIV. P. 9(b). (D.E. 27 at 32; D.E. 54 at 20–21.)  Defendants argue that the specifics of the alleged scheme are missing, especially with regard to Defendant BANA. (*Id.*)  Defendants point out that none of the allegedly fraudulent deeds of trust attached to the FAC were filed with the County by BANA. (See Pls.' Exs. 1–5 attached to FAC.)

Plaintiff alleges throughout the FAC that Defendants, including BANA, falsely named MERS as a beneficiary, grantor, grantee, holder of legal title in the security interests, lender, holder of the note and lien, and/or the legal and equitable owner and holder of the promissory notes in deeds of trust filed with the County over a span of several years. (FAC ¶¶ 21, 26–29, 32, 35, 42.)  The Court must accept these allegations as true.  Taken together, these allegations establish the who, what, where, when, and how of a scheme to circumvent Texas recording law, which resulted in the alleged fraudulent filing of hundreds or potentially thousands of documents or records with the County over the past several years.  The FAC does not identify each instance Defendants allegedly filed a fraudulent deed of trust with the County; however, this level of detail is not required by the federal rules.

The purpose of the heightened pleading standard for fraud is to apprise Defendants of the nature of the claim and the statements relied upon by Plaintiff as constituting the fraud. Rule 9(b) must, however, be interpreted in conjunction with the Federal Rules of Civil Procedure general pleading standard set forth in Rule 8, which requires only a "short and plain statement of the claim" and "simple, concise, and direct" allegations. *See Corwin v. Marney, Orton*

*Investments*, 788 F.2d 1063, 1068 n. 4 (5th Cir. 1986).  To require Plaintiff to plead specifics for each of the alleged fraudulent filings in the case at hand would obliterate the federal rules basic pleading philosophy. *See id.* (citing 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1298 at 406–16 (1969)).  Plaintiff has stated sufficient facts upon which Defendants can prepare an effective response and defense to all Plaintiff's allegations. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 743 (S.D. Tex. 1998).  Nothing more is required at this stage of the litigation.  The Court thus finds that the FAC stated Plaintiff's Section 12.002 claims with sufficient particularity, and Defendants' motion to dismiss is denied with regard to Plaintiff's Section 12.002 cause of action.

### C.    Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation, Plaintiff must show the following elements: (1) Defendants made a misrepresentation to Plaintiff about a material fact; (2) Defendants knew the representation was false when it was made, or Defendants made the representation recklessly without any knowledge of its truth; (3) Defendants made the representation with the intent that Plaintiff act upon it, or with the intent to induce the Plaintiff's reliance on the representation; (4) Plaintiff relied on the misrepresentation; (5) Plaintiff's reliance was justifiable; and (6) Plaintiff suffered an injury as a result of the misrepresentation. *Coach, Inc. v. Angela's Boutique*, Civ. No. H-10-1108, 2011 WL 2446387, at *4 (S.D. Tex. June 15, 2011); *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992).  Defendants do not contest the knowing element. (D.E. 48.)  Defendants' other arguments are considered below.

     1.    *Allegations Sufficient to Plausibly Infer Defendants Made False Statements*

Defendants argue that Plaintiff's fraudulent misrepresentation claim must be dismissed because Plaintiff failed to allege any false statements. (D.E. 48 at 2–3.)  The FAC alleges that Defendants filed or caused to be filed security instruments in the County property records which falsely represent that MERS has an interest in certain parcels of real property as a grantee, grantor, beneficiary, lender, and holder or owner of notes and liens. (FAC ¶ 42.)  Defendants argue, however, that these alleged statements were not false because (a) Section 51.0001(4) of the Texas Property Code permits MERS to serve as a secured party; (b) the borrowers agreed in the deeds of trust that MERS was a beneficiary; and (c) MERS holds a lien on the properties secured by the deeds of trust. (D.E. 48 at 2–3.)

Plaintiff responds that Defendants' interpretation of Section 51.0001 is incorrect and that, by its own admission, MERS has "no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans." (MERS Terms and Conditions for Members, App. 1 to Pl.'s Supp. Resp., D.E. 52-1 at 14.)  Therefore, Plaintiff argues that MERS never acquired a lien in any of the properties, and naming itself as the beneficiary of the security instruments was fraudulent. (D.E. 52 at 2.)

The Court must first consider whether Section 51.0001(4) permits MERS to serve as a secured party (i.e., the grantee) for a mortgage.  In Subsection B-1, *supra*, the Court concluded that, for purposes of Chapter 51 of the Texas Property Code, MERS is not a lender, grantee, beneficiary, owner, or holder of the security instruments; it is merely the nominee of the MERS members that serve in those capacities.  Accordingly, the Court rejects Defendants' argument that they are shielded from liability by Section 51.0001(4) of the Texas Property Code.  Under

Section 51.0001, MERS may serve as the nominee of the beneficiary, but this does not make MERS a secured party.  The security instruments secure the repayment of the loans to the lenders, not to MERS. (*See, e.g.*, D.E. 39-1 at 2.)  MERS has no right to enforce the promissory notes or seek judgments against borrowers in default.  MERS is simply the nominee of the beneficiaries of the security instruments with the right to foreclose on behalf of the secured parties under the deeds of trust.  In sum, neither Texas law, nor the allegations set forth in the FAC, support Defendants' argument that MERS may serve as a secured party or lienholder.

The Court additionally rejects Defendants' other arguments that there were no false statements because the borrowers agreed in the deeds of trust that MERS was a beneficiary, and MERS holds a lien on the properties secured by the deeds of trust.  These arguments directly conflict with the language of the deeds of trust, as well as Section 51.0001(1), which state that MERS serves solely as the nominee for the secured party.  MERS is not a lienholder, grantee, secured party, or beneficiary.  Accordingly, the Court concludes that the FAC sets forth sufficient facts to give rise to a plausible inference that Defendants made false statements to the County regarding their rights under the deeds of trust and their relationships to the borrowers in the mortgages issued by MERS members.

> 2.  *Allegations Sufficient to Plausibly Infer That Alleged Misrepresentations Concerned Material Facts*

Next, Defendants argue that Plaintiff's fraudulent misrepresentation claim must be dismissed because Defendants' allegedly false statements concerning MERS' legal status were legal *opinions*, not misrepresentations of material *facts*. (D.E. 48 at 3.)  The Court disagrees with this distinction.

Plaintiff must demonstrate that Defendants made the statements with the intent to deceive. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48

(Tex. 1998).  Moreover, Plaintiff "must show that each representation complained of concerned a material fact as distinguished from a mere matter of opinion, judgment, probability, or expectation." *Stephanz v. Laird*, 846 S.W.2d 895, 903 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

Plaintiff alleges that Defendants represented in official documents filed with the County that MERS was a grantee, grantor, beneficiary, lender, and holder or owner of notes and liens. (FAC ¶¶ 23, 25, 27, 29, and 42.)  These statements were not qualified legal opinions, but they were statements of fact made with the knowledge and intent they would have a particular legal effect. (FAC ¶¶ 26, 36, and 37.)  The alleged misrepresentations caused the County to index the deeds of trust in a particular way and resulted in MERS being publicly identified through the County records as having a security interest in the properties.   Accordingly, viewing the allegations of the FAC in the light most favorable to Plaintiff, the Court concludes that one could plausibly infer that Defendants made material misrepresentations of fact to Plaintiff in the deeds of trust presented to the County for filing.

       3.     *Allegations Sufficient to Plausibly Infer that County Suffered an Injury*

Defendants assert that Plaintiff's fraudulent misrepresentation claim must be dismissed because the FAC fails to allege a pecuniary loss. (D.E. 48 at 3–4.)  Defendants argue that the County is not entitled to any filing fees for documents not presented for filing and that the County has not been injured by the allegedly false filings because the County's duty is purely mechanical—to file the deeds of trust as presented and maintain an index of those instruments. (*Id*. at 4.)  Moreover, Defendants contend that Plaintiff is not even within the class of persons the recording statutes are designed to protect; therefore, any inaccuracies in the records do not injure Plaintiff in a legally cognizable manner. (*Id*.)  The Court disagrees.

Defendants argument concerning a lack of pecuniary losses by the County is premised on the provisions set forth in TEX. CONST. ART. I, § 3 and TEX. GOV'T CODE §§ 118.002 and 118.011(a). (See Defendants' argument regarding standing, D.E. 27 at 33.)  Defendants argue that these provisions provide that the County is not permitted to charge a fee for services unless those services have been rendered. (*Id.*)  Yet, the County is not suing to recover unpaid filing fees, but statutory and compensatory damages resulting from Defendants' allegedly unlawful activities that caused a reduction in filing fees and the degradation of the County's property records.  The distinction is subtle, but important.  "Damages are the sum of money which a person wronged is entitled to receive from the wrongdoer as compensation for the wrong." BLACK'S LAW DICTIONARY 445 (9th ed. 2009) (quoting Frank Gahan, *The Law of Damages* 1 (1936)).  One measure of Plaintiff's damages could be the filing fees that the County would have received but for Defendants' activities.  This is not the same as Plaintiff suing to recover unpaid fees for services rendered.  Plaintiff asserts lost filing fees merely as a measure of damages, not as a cause of action.

In addition to the lost filing fees, the FAC alleges that the County suffered an injury due to the degradation and corruption of its property records as a result of Defendants' false filings. (FAC ¶ 38.)  The Court recognizes that the maintenance of accurate property records is a matter of public concern. *See* TEX. LOCAL GOV'T CODE § 201.002 ("recognizing the central importance of local government records in the lives of all citizens") *Vanderbilt Mortgage & Finance, Inc. v. Flores*, No. 11-40602, 2012 WL 3600853, at *11 (5th Cir. Aug. 23, 2012) ("The filing of fraudulent liens undermines the reliability of the public records system on which so many rely, including landowners, purchasers, local governments, title companies, insurers, and realtors.").  Defendants' filings of inaccurate or fraudulent property records is alleged to be so widespread

and pervasive as to have damaged the integrity of Texas' real property records and to have all but collapsed the real property recording system in the County. (FAC ¶¶ 3, 30, 31.)  If these assertions are correct, the County has been harmed, first, because it relies on accurate property records in conducting its own business and, second, because the value of this essential public service and the County's value as an institution has been damaged if people and businesses can no longer rely on the accuracy of the property records it maintains.

The Court therefore concludes that the FAC sets forth sufficient facts to give rise to a plausible inference that the County suffered an injury as a result of Defendants' alleged misrepresentations.

4.    *Allegations Sufficient to Plausibly Infer that County Justifiably Relied on Defendants' Alleged Misrepresentations*

Defendants argue that Plaintiff's fraudulent misrepresentation claim must be dismissed because the FAC fails to allege that the County justifiably relied on any misrepresentations by Defendants. (D.E. 48 at 4–5.)  Defendants argue that Plaintiff never changed its position in reliance on the real property record filings because the County Clerk is required by statute to simply record the documents presented to it, and this legal obligation does not constitute reliance. (*Id.*)  Plaintiff responds that the County reasonably and justifiably relies upon the party denominations on a deed of trust in determining whether and how to designate a party in the grantee-grantor index. (D.E. 52 at 3.)

"An essential element of a common-law fraud action is a plaintiff's reasonable or justifiable reliance upon the defendant's alleged misrepresentation, which reliance induced action or inaction on the plaintiff's part . . . ." *TCA Bldg. Co. v. Entech, Inc.*, 86 S.W.3d 667, 674 (Tex. App.—Austin 2002, no pet.).  The Texas recording statute is permissive.  Texas does not require businesses or individuals to record their interests in property, nor does it require counties

to independently investigate the truthfulness and accuracy of the deeds of trusts, liens, security instruments, and mortgages submitted for recordation.  To maintain its property records, the County instead relies on those filing a lien or security interest with the County to truthfully and accurately represent the parties' interests.  The FAC alleges that it has been the convention in Texas for well over 150 years to index as the grantee in the property records the person designated as the beneficiary in the deed of trust, and that Defendants exploited this practice in creating the MERS system. (FAC ¶¶ 16, 26, 27, and 28.)  Moreover, a security instrument, lien, mortgage, or deed of trust is a legal document, and the words used therein generally have very specific meanings and legal consequences for the parties to the agreements.  The County and others rely on the truth and accuracy of these legal documents in conducting their business.

Although the County Clerk may file and index security instruments presented for recordation in a certain manner—whether by statute, policy, or custom—the County still relies on the truthfulness and accuracy of the documents presented for filing to perform its duties. Accordingly, considering the allegations of the FAC in the light most favorable to Plaintiff, the Court concludes that the FAC sets forth sufficient facts from which one could plausibly infer that Plaintiff justifiably and reasonably relied on Defendants' alleged misrepresentations.

> 5. *Allegations Sufficient to Plausibly Infer that Defendants Made the Alleged Misrepresentations with the Intent and Purpose to Induce Reliance*

Defendants argue that Plaintiff's fraudulent misrepresentation claim must fail because MERS did not make the alleged misrepresentations with the intent and purpose to deceive as the County is not within the class of individuals the recording statutes are designed to protect. (D.E. 48 at 5–6.)

The FAC alleges that MERS was established so that its members could avoid recording subsequent mortgage transfers or assignments with the County and paying the associated filing

fees once a mortgage was recorded on the MERS system (FAC ¶¶ 2, 17, 37); that, to accomplish this, MERS members agreed amongst themselves to list MERS as the beneficiary in their deeds of trust when originating a loan (FAC ¶¶ 19, 20); and that this caused MERS to be indexed as the grantee for the mortgages in the property records and permitted any subsequent transfers of the mortgages between MERS members to be tracked electronically in the MERS system (FAC ¶¶ 19, 20, 27, 30).

Based on the above allegations, the Court concludes that the FAC sets forth sufficient facts to give rise to a plausible inference that Defendants acted with the intent and purpose to induce the County Clerk to rely on Defendants' false statements regarding MERS' status with respect to the security instruments so that MERS would be recorded as the grantee in the County's property records, and Defendants could avoid recording subsequent mortgage assignments and transfers with the County.   Consequently, Defendants' motion to dismiss is denied with regard to Plaintiff's fraudulent misrepresentation cause of action.

### D.    Texas Local Government Code § 192.007

Plaintiff alleges that Defendants violated Section 192.007(a) of the Texas Local Government Code by failing to record all releases, transfers, assignments, and other actions relating to the deeds of trusts Defendants recorded or caused to be recorded in the real property records of the County. (FAC ¶¶ 45–50.)   Defendants argue that this cause of action must be dismissed with prejudice, first, because there is no duty to record assignments under Texas law; second, because there is no right of action under Section 192.007; and third, because the transfer of a promissory note from one MERS member to another does not require the re-recording of the security instrument as MERS continues to hold legal title to the deed of trust. (D.E. 27 at 34.)

      1.    *Section 192.007 Imposes a Duty to Record Releases, Assignments, and Transfers of Previously Recorded Instruments*

Defendants argue that, under Texas law, the filing of property records is always permissive, and Section 192.007 imposes no duty to record or re-record assignments, or any other documents evidencing an interest in property. (D.E. 27 at 34–39.)  Defendants argue that Section 192.007 only relates to the *manner* in which a document releasing, transferring, assigning, or taking some other action with regard to an instrument filed, registered, or recorded in the office of the county clerk must be recorded, but a person is never *required* to record an instrument. (*Id.* at 37.)  Plaintiff responds that the plain language of the statute requires recording with the County any assignment, release, or transfer related to a previously recorded instrument. (D.E. 46 at 36.)

Defendants are correct that the Texas Property Code is generally permissive with regard to the recording of a mortgage or deed of trust concerning real property located within the State. TEX. PROP. CODE § 12.001 ("An instrument concerning real or personal property *may* be recorded"); § 12.003 ("written evidence of title to land . . . *may* be recorded"); § 12.004 ("written evidence *may* be recorded"); § 12.009 ("A master form of a mortgage or deed of trust *may* be recorded.") (emphasis added).  However, these sections do not address the duties of a lienholder once an interest in property has been recorded with the County, and whether the lienholder has a duty to update the property records if its status with regard to a recorded security instrument has changed.

The Court considers the plain language of the statute.  Section 192.007(a) of the Texas Local Government Code provides:

> To release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.

TEX. LOC. GOV'T CODE ANN. § 192.007(a).  Based on the plain language of Section 192.007, the Court concludes that the statute requires the re-filing of an instrument each time there is a release, transfer, assignment, or some other action relating to an instrument filed with the county clerk.  This interpretation is consistent with this Court's previous interpretation of this statute. *See Miller v. Homecomings Financial, LLC*, 881 F. Supp. 2d 825, 830 (S.D. Tex. 2012) ("Texas statute declares that any transfer or assignment of a recorded mortgage must also be recorded in the office of the county clerk").  There are no recorded cases of Texas state courts interpreting Section 192.007.

> 2.     *Trading of Promissory Notes Between MERS Members Constitutes Releases, Transfers, Assignments, or Other Actions with Regard to Security Instruments That Requires Re-Recording*

Next, Defendants argue that transfers or assignments of promissory notes between MERS members do not result in the assignment or transfer of the deeds of trust under the MERS system because MERS holds legal title to the deeds of trust and serves as the beneficiary of record. (D.E. 27 at 41–42.)  Defendants argue that the promissory notes and the deeds of trust constitute two different instruments, that MERS serves as the legal title holder of the deed of trust, and that, under the MERS system, MERS members can freely trade the promissory notes between themselves without there ever being any transfer or assignment of the deeds of trust. (*Id*.)  The Court disagrees.

It is well established under Texas and federal law that a promissory note and the deed of trust securing that note are inseparable, and an assignment or transfer of ownership of the note carries the deed of trust with it. *See Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident.  An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."); *McCarthy v. Bank of America, NA*, No. 4:11-cv-356-A, 2011 WL 6754064, at *3 (N.D. Tex.

Dec. 22, 2011); *West v. First Baptist Church*, 71 S.W.2d 1090, 1099 (Tex. 1934); *Pope v. Beauchamp*, 219 S.W. 447, 449 (Tex. 1920) ("well settled that the assignment of the debt . . . draws after it the mortgage as appurtenant to the debt"); *Solinsky v. Fourth Nat'l Bank*, 17 S.W. 1050, 1051 (Tex. 1891); *Perkins v. Stern*, 23 Tex. 563 (1859); *Campbell v. Mortgage Elec. Registration Sys.*, No. 03-11-00429-CV, 2012 WL 1839357, at *4 (Tex. App.—Austin May 18, 2012, pet. den.) (mem. op.) ("When a mortgage note is transferred, the mortgage or deed of trust is also automatically transferred to the note holder by virtue of the common-law rule that 'the mortgage follows the note.' ").

The instrument securing the note is transferred every time the promissory note is sold. MERS can serve as an agent or nominee of the lienholder with rights under the deed of trust; however, whenever there is a transfer of the promissory note, there is also a transfer of the deed of trust, and Section 192.007(a) requires that this transfer be recorded in the Texas property records.

### 3.    *No Private Right of Action*

Finally, Defendants argue that, even if there exists a recording requirement for previously recorded security instruments, the Court should dismiss Plaintiff's claim because Section 192.007 does not provide the County with a private right of action. (D.E. 27 at 39–41.)  Plaintiff argues that the Court may derive a private right of action from the language and purpose of Section 192.007. (D.E. 46 at 34–37.)

In determining whether a statute provides for a private right of action, the Court must look to the drafters' intent. *See Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004); *Davis v. Hendrick Autoguard, Inc.*, 294 S.W.3d 835, 838 (Tex. App.—Dallas 2009, no pet.).  Nothing in the plain language of section 192.007 indicates that the Texas Legislature intended to create a

private right of action for enforcement of the statute; nor is there anything in the legislative history to suggest such an intent.  Plaintiff argues that the Legislature is not presumed to do a useless act and that the law does not permit a wrong without a remedy. (D.E. 46 at 36.)  Standing alone, however, this does not provide strong evidence of a private right of action.  Moreover, the law does provide a remedy against those who fail to record their interests in real property. Rather than imposing statutory damages against those who fail to record, the recording of interests in real property is encouraged by granting perfected status to those who record against subsequent creditors and purchasers.  The Texas Property Code provides that when a person fails to record his or her interest in property, that interest "is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice." TEX. PROP. CODE ANN. § 13.001.

The Court therefore concludes that Texas Local Government Code Section 192.007 does not provide for a private enforcement action. *See El Paso Cty. v. Bank of New York Mellon*, No. A-12-CA-705-SS, 2013 WL 285705, at *3, n. 3 (W.D. Tex. Jan. 22, 2013) ("Court finds the Texas recording statutes provide no private right of action for Plaintiffs").   Accordingly, Plaintiff's cause of action under Section 192.007 of the Texas Property Code is DISMISSED pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### E.    Texas Government Code § 51.901

Plaintiff asserts a claim for declaratory judgment requesting judicial declarations (1) that Defendants' filings of deeds of trust identifying MERS as a mortgagee, beneficiary, grantor, lender, holder of notes and liens, and the legal and equitable owner and holder of promissory notes constitute a violation of Section 51.901 of the Texas Government Code; and (2) that each Defendant is liable for having failed to properly record all releases, transfers, assignments, or

other actions relating to instruments Defendants filed or caused to be filed, registered, or recorded in the County property records. (FAC ¶¶ 55–57.)

Section 51.901(a) instructs the County Clerk what to do in the event there arises a reasonable basis to believe in good faith that an instrument recorded or submitted for filing in the County's property records is fraudulent. The statute does not, however, prohibit the filing of fraudulent instruments, nor does it provide a penalty for those who file fraudulent instruments. The Court cannot enter a declaratory judgment stating that Defendants' actions violated Section 51.901 because the statute does not require Defendants to take, or refrain from taking, any action. Therefore, Defendants cause of action for a declaratory judgment under Section 51.901 of the Texas Government Code is DISMISSED pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### F.    Unjust Enrichment

Defendant BANA argues that Plaintiff's unjust enrichment claim should be dismissed because it is merely an attempt by Plaintiff to do an end run around the lack of a private cause of action under Texas Local Government Code Section 192.007, and because unjust enrichment is a theory of recovery, not a separate cause of action. (D.E. 27 at 42–43.)  In a separate brief, Defendants MERS and MERSCORP argue that Plaintiff's unjust enrichment claim should be dismissed because the FAC fails to allege that the fees charged by MERS members were obtained from the County; and therefore, MERS did not receive any benefit from Plaintiff. (D.E. 51 at 2.)

Plaintiff responds that unjust enrichment is an independent cause of action, and Plaintiff has conferred a benefit upon MERS and its members by providing a public recording system that MERS takes advantage of to perfect its members' property liens;  MERS then usurps the role of

the County in recording future transfers and assignments by inserting itself into the County property records as a substitute grantee for its members; and Defendants then become unjustly enriched by charging fees to their members to record transfers and assignments of the mortgage. (D.E. 46 at 42.)  In contrast, a grantee operating outside the MERS system is required to pay a filing fee to the County each time a mortgage is transferred or assigned to maintain a lien's perfected status. (*Id*.)

Texas law permits a plaintiff to seek recovery under a theory of unjust enrichment when a party has obtained a benefit from the plaintiff by fraud, duress, or the taking of an undue advantage, or when a person wrongfully secures or passively receives a benefit which it would be unconscionable to retain. *Douglass v. Beakley*, 900 F. Supp. 2d 736, 752 (N.D. Tex. 2012); *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied).  Unjust enrichment may be both an equitable right asserted as its own cause of action, or a theory of recovery. *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010); *Douglass v. Beakley*, 900 F. Supp. 2d 736, 752 n. 18 (N.D. Tex. 2012); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Unjust enrichment is an independent cause of action.").  In the case at hand, Plaintiff asserts it as an independent cause of action. (D.E. 46 at 42.)  To recover, Plaintiff must show that Defendants profited at the County's expense. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998).

The crux of Plaintiff's claim is that Defendants received an essential service virtually free of charge from the County and then resold that service to its members.  There is nothing that prohibits MERS from independently registering and tracking mortgages as a book entry system

or from serving as an agent and nominee and providing foreclosure and registration services for lenders. The MERS system, however, allegedly goes beyond this limited function by usurping the role of the County as a public registry of real property interests. MERS is not a public registry, but a confidential, electronic registry of mortgages available to lenders, servicers, and other players in the mortgage industry to track the ownership and servicing rights for mortgages traded amongst MERS members.

The object of recording statutes is to protect innocent purchasers and creditors against prior interests in real property which were not properly recorded, so as to prevent them from being injured or prejudiced by their lack of knowledge of competing claims. *Noble Mortg. & Investments, LLC*, 340 S.W.3d at 79. The modern property recording system relies on voluntary recordation of liens and other interests in public property records. In exchange for recording their interests, lienholders are granted priority status over subsequent purchasers or lienholders. Plaintiff alleges that Defendants have filed thousands of fraudulent deeds of trust naming MERS as the beneficiary in order to circumvent Texas recording laws and establish a parallel recording system which purports to provide the same protections as the County's recording system; that Defendants MERS and MERSCORP have been unjustly enriched by the recording fees they have collected from their members; and that BANA has been unjustly enriched by avoiding the payment of filing fees to the County. (FAC ¶¶ 1–4, 13–31, 51–54.)

Based on the allegations set forth in the FAC, one could plausibly infer that Defendants obtained a benefit from Plaintiff through fraud and/or by taking undue advantage of the County's policies regarding recording property liens; that in order to confer upon its members the benefits of perfected lienholder status, MERS was required to accurately record and update the security instruments with the proper grantor and grantee under TEX. LOC. GOV'T CODE § 192.007; that

this would have required MERS to pay the County filing fees each time a mortgage was transferred; and that equity demands Defendants reimburse the County for the benefits they received.  Accordingly, with regard to Plaintiff's unjust enrichment cause of action, Defendants' motion to dismiss is denied.

### G.    Conspiracy

Finally, Defendants argue that Plaintiff's conspiracy claim must be dismissed because Plaintiff merely parrots the elements of a civil conspiracy, and such conclusory allegations are insufficient to state a claim for relief. (D.E. 27 at 49.)  Plaintiff responds that, while the paragraph alleging conspiracy does not set forth this cause of action in detail, or set out each act by Defendants in furtherance of the conspiracy, the FAC sets forth the underlying facts upon which Plaintiff's conspiracy cause of action is based in sufficient detail to survive the present motion to dismiss. (D.E. 46 at 46–47.)

A common law civil conspiracy is frequently alleged as a derivative cause of action based upon the defendants' participation in some underlying tort. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).  To state a claim for civil conspiracy under Texas law, a plaintiff must allege an agreement between "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).   The allegations must demonstrate that "the particular defendant agreed with one or more of the other conspirators on the claimed illegal object of the conspiracy and intended to have it brought about." *Goldstein v. Mortensen*, 113 S.W.3d 769, 779 (Tex. App.—Austin 2003, no pet.) (citing *Zervas v. Faulkner*, 861 F.2d 823, 836 (5th Cir. 1988)).  "[P]roof that an individual had some collateral involvement in a transaction, and had good reason to believe that there existed a

conspiracy among other parties to it, is insufficient of itself to establish that the defendant was a conspirator." *Id.* (citing *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 928 (Tex.1979)).

Plaintiff acknowledges that the paragraph alleging conspiracy (FAC ¶ 61) is insufficient to state a cause of action; however, Plaintiff points to specific conduct alleged throughout the FAC.  The Court concludes, however, that there are insufficient allegations demonstrating an agreement between the Defendants to misrepresent MERS as the beneficiary in order to defraud the County regarding the identity of the secured parties.  Plaintiff's general allegations that BANA was a shareholder in MERSCORP, that it participated in the formation of MERS, and that Wall Street, including BANA, decided to write its own rules are insufficient to demonstrate a conspiracy. (FAC ¶¶ 10, 18, 19, 20, 21, 27.)  The allegations demonstrate Defendants were collaterally involved in the development of the MERS system as investors, but this falls short of the type of coordinated plan of action necessary to show conspiracy.  Accordingly, Plaintiff's conspiracy cause of action is DISMISSED pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  Nevertheless, the Court grants Plaintiff leave to amend the FAC to provide additional factual allegations with regard to its conspiracy claim. *See United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (" 'A district court should 'freely give leave' to amend a complaint 'when justice so requires.' " (quoting FED. R. CIV. P. 15(a)(2))).

## V.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (D.E. 26) is GRANTED IN PART and DENIED IN PART.  The Court concludes that Plaintiff alleged sufficient facts to give rise to a plausible inference of liability with regard to Plaintiff's causes of action alleging violations of Section 12.002 of the TEX. CIV. PRAC. & REM. CODE, unjust enrichment, and

fraudulent misrepresentation.   The Court retains these causes of actions.   Plaintiff's remaining causes of action are dismissed for failure to state a claim upon which relief may be granted. Plaintiff is granted leave to file an amended complaint asserting additional allegations supporting its conspiracy cause of action within fourteen (14) days from the filing of this Order.

ORDERED this 3rd day of July 2013.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE